**SCHOOL DISTRICT OF the CITY OF ALLENTOWN, Petitioner,**

v.

**Ray MARSHALL, Secretary of Labor, U. S. Department of Labor and Edward Hanna, Respondents.**

No. 80–2347.

United States Court of Appeals, Third Circuit.

Argued June 10, 1981.

Decided Aug. 6, 1981.

Edward H. Feege (argued), Hayes & Feege, P.C., Allentown, Pa., for petitioner.

Nancy J. Marvel (argued), Anthony C. Liotta, Donald W. Stever, Jr., Dept. of Justice,· Washington, D. C., for respondents.

Before ALDISERT, WEIS and SLOVITER, Circuit Judges.

### OPINION OF THE COURT

WEIS, Circuit Judge.

Respondent Edward Hanna persuaded the Secretary of Labor that a complaint of retaliation by an employer should have been deemed timely under the Toxic Substances Control Act although it was filed beyond the thirty-day limitation specified in the statute. We find no adequate basis in the record for tolling the limitation period, and, therefore, set aside the Secretary's order against the employer, a state school district. Finding the timeliness issue dispositive, we do not meet the School District's contention that as a state agency it is not within the scope of the Act.

Hanna complained to the Secretary of Labor about retaliation from his employer, the Allentown School District. Hanna asserted that the Toxic Substances Control Act, 15 U.S.C. §§ 2601–2629 (1976 & Supp. III 1979), had been violated when the School District discriminated against him for activities designed to uncover health hazards from asbestos construction materials in school buildings. After a hearing, an Administrative Law Judge concluded that Hanna's activities were not covered by the Act and that, in any event, his complaint was untimely. The Secretary reversed and ordered the School District to cease discriminating against Hanna. The School District has filed a petition for review.

Hanna is a teacher at Allentown High School and president of the Allentown Federation of Teachers, an organization that seeks to displace another union as the collective bargaining representative of petitioner's professional employees. In February 1979, he wrote to the president of the School Board and requested that steps be taken to determine whether there were any health hazards from asbestos used in the construction of district school buildings, and if so, what steps were required to cope with the situation. The Board declined Hanna's request, stating that an inspection had been previously conducted and corrective measures had been taken.

Hanna then wrote to the Pennsylvania Department of Environmental Resources, and a representative of that agency agreed to inspect the school buildings on March 6, 1979. Hanna requested a personal leave day "with justification" so that he could accompany the state inspector. A collective bargaining agreement with the School District allows teachers four days of annual leave, with pay, for personal convenience, one of which may be taken without giving any reason, termed "without justification." The School District, which classifies the requests, told Hanna on March 5 that leave for the inspection tour would be allowed "without justification."

The state inspector made the building survey as scheduled and was accompanied by Hanna. On March 22, Hanna requested permission to make an additional investigation, but, by letter of April 3 from the School District, was advised that a state examination of the buildings had been ar-

ranged and that his presence was not necessary. Building superintendents were notified that Hanna should not be allowed random access to any school other than the one to which he was assigned.

On April 19, Hanna wrote to the United States Environmental Protection Agency, praising an official for his appearance on a television program about asbestos in school buildings. Hanna narrated his own experiences in Allentown and his receptiveness to advice and help. The EPA replied by letter dated May 4, which included a reference to the anti-retaliation provision in the Toxic Substances Control Act. The agency enclosed a copy of the statute and stated in the letter, "Should you believe such action is warranted, we will be pleased to assist you further in referring you to the proper contact with the Department of Labor."

Hanna telephoned the EPA on several occasions and, after some delay caused by confusion at that agency, was referred to the Occupational Safety and Health Administration. On May 29, 1979, he submitted a complaint to OSHA alleging discrimination. He cited the denial of a day "with justification," the ban on random access to the school buildings, and an allegedly harassing inquiry about his March 6, 1979, lesson plan.

The ALJ to whom the case was assigned found that the limitation on access to buildings occurred no later than April 5, 1979, and the other incidents took place in March. He ruled that the thirty-day limitation period specified in the Act had lapsed before the complaint was filed, and the action was barred for that reason. In addition, he concluded that Hanna's activities were not designed to carry out the purposes of the Act, and the anti-discrimination provisions were therefore not applicable.

1. Hanna filed a second complaint in August 1979 charging that the filing of a libel suit against him by the School District constituted discrimination in violation of the Act. The ALJ and the Secretary both concluded that the bringing of a tort action was not an adverse personnel action within the meaning of the Act, see note 2 infra, and the complaint was therefore dismissed. No appeal has been taken from that ruling.

The Secretary of Labor determined that because the Act was relatively new and the EPA was uncertain as to where complaints should be filed, the thirty-day limitation period should be tolled. He reasoned that the time limitation should not be strictly enforced, since the Act states a complaint "may" be filed within thirty days. He also concluded that the statute was applicable and, finally, that Hanna had established a case of unlawful discrimination. In denying a motion for reconsideration, the Secretary, with no discussion, held that the School District was an employer within the meaning of the Act.[1]

In addition to denying discrimination, on appeal the School District contends that there are two bars to the Secretary's order. It argues that the School District, as a state agency, is not within the undefined statutory term "employer," and in the alternative, the Act is unconstitutional, citing *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In addition, the School District asserts that the thirty-day limitation set out in the statute is jurisdictional, and thus Hanna's failure to comply requires dismissal.

■ This court has jurisdiction over the petition for review and therefore is empowered to pass on challenges to the jurisdiction of the Secretary of Labor. *See* 15 U.S.C. § 2622(c)(1). We conclude that the time limitation is not jurisdictional in the sense that noncompliance is an absolute bar to administrative action. Nevertheless, in these circumstances, the failure to file a complaint within the prescribed thirty days requires a decision in favor of the School District. That being so, we need not address questions regarding the meaning of the statutory term "employer."

Additionally, we note that Hanna filed a grievance under the collective bargaining agreement, contending that he should have been allocated a day "with justification." This is based on the same claim asserted before the Secretary. The record does not reveal the results of the grievance procedures.

The pertinent portion of the statute provides that "[a]ny employee who believes that [he] has been ... discriminated against by any person in violation of subsection (a) of this section may, within 30 days after such violation occurs, file ... a complaint with the Secretary of Labor ... alleging such ... discrimination." 15 U.S.C. § 2622(b).[2]

Although it is clear that Hanna filed his complaint after the thirty-day time period had expired, the Secretary found that the deficiency should be overlooked for a number of reasons: (1) no one was prejudiced; (2) the limiting language was permissive, not mandatory in nature; (3) since the Act is remedial, it should be broadly construed to effectuate its purposes; (4) Hanna was unaware of the terms of the statute, and there was confusion at the EPA as to where the complaint should be filed; and (5) Hanna's April 19, 1979, letter to the EPA constituted a complaint.

The last point is not defended on appeal, and having read the letter to the EPA, we would hold that it does not constitute a complaint. Moreover, it is clear that the statute requires a complaint to be filed with the Secretary of Labor, not the EPA.[3] We also find unpersuasive the Secretary's reasoning that Hanna's late filing should be excused because the statute was new, no regulations had been adopted, and the EPA was confused. In fact, the statute, enacted more than two years earlier, explicitly required filing with the Secretary of Labor. No regulations could take the responsibility from his department.

The Secretary relied on the theory of equitable tolling, citing *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). On appeal, he invokes *Hart v. J. T. Baker Chemical Corp.*, 598 F.2d 829 (3d Cir. 1979), as additional support for his ruling. In those cases, we held that the time periods set for filing complaints under the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964 are not jurisdictional insofar as noncompliance would defeat an action regardless of the equities in a given case. We continue to adhere to that view and see no reason to adopt a different rule with respect to the limitation period prescribed by the Toxic Substances Control Act. We agree with the Secretary that the statute is remedial and should be given a construction consistent with its objectives.

In *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Court concluded that the utilization of grievance procedures under a collective bargaining agreement did not toll the time period for filing a complaint with the EEOC under Title VII. The fact that the Court discussed the concept of "tolling" the limitations period is, we believe, consistent with our holdings that such periods are more like statutes of limitations than jurisdictional bars. In the absence of any evidence that the thirty-day period was intended to be a prerequisite to the exercise of jurisdiction by the Secretary of Labor, we conclude that the analogy to a statute of limitations should control.

The restrictions on equitable tolling, however, must be scrupulously observed. In *Smith v. American President Lines, Ltd.*, 571 F.2d 102 (2d Cir. 1978), the United States Court of Appeals for the Second Circuit read the Supreme Court's decisions as implying that tolling may be appropriate only when

---

2. Subsections (1) and (3) of 15 U.S.C. § 2622(a) provide that "[n]o employer may ... discriminate against any employee with respect to ... compensation, terms, conditions or privileges of employment" because he has caused a proceeding under the Act to be commenced or "assisted or participated ... in any manner in such a proceeding or in any other action to carry out the purposes of this [Act]."

3. Apparently, the Occupational Safety and Health Administration, with which Hanna's May 29 complaint was filed, is not the proper forum either, but unlike the EPA, is within the Department of Labor and referred the complaint to the Department's Wage and Hour Division of the Employment Standards Administration.

"[(1)] the defendant has actively misled the plaintiff respecting the cause of action,

[(2)] the plaintiff has in some extraordinary way been prevented from asserting his rights, or

[(3)] the plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum."

*Id.* at 109.

We do not now decide whether these three categories are exclusive, but we agree that they are the principal situations where tolling is appropriate. We would add, however, based upon our reading of *Burnett v. New York Central Railroad*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), discussed *infra*, that the filing of a claim in the wrong forum must also be timely before it will toll the appropriate limitations period. The tolling exception is not an open-ended invitation to the courts to disregard limitations periods simply because they bar what may be an otherwise meritorious cause. We may not ignore the legislative intent to grant the defendant a period of repose after the limitations period has expired.

Specifically, the Secretary erred in making lack of prejudice to the School District a determining factor in permitting a late filing. Any limitation period is arbitrary in nature. The choice of the appropriate time is not entrusted to the administrative agency or to the courts. It is the result of legislative determinations made after weighing the various interests at stake. *See Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605, 611 (3d Cir. 1980) (Weis, J., dissenting). Obviously Congress intended that complaints be made and resolved within a very short time after the alleged violation occurred. It is not for us or the Secretary to casually ignore the statutory limitation.

In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court discussed the time limitations under Title VII and said, "[I]n a statutory scheme in which Congress carefully prescribed a series of deadlines measured by number of days—rather than months or years—we may not simply interject an additional 60-day period into the procedural scheme." *Id.* at 825–26, 100 S.Ct. at 2497. In a similar vein, *Electrical Workers v. Robbins & Myers, Inc.* cautions, "Congress has already spoken with respect to what it considers acceptable delay when it established a 90-day limitations period, and gave no indication that it considered a 'slight' delay followed by 90 days equally acceptable. In defining Title VII's jurisdictional prerequisites 'with precision,' Congress did not leave to courts the decision as to which delays might or might not be 'slight.'" 429 U.S. at 240, 97 S.Ct. at 449 (citation omitted).

It is clear that we may not read the clear terms out of the statute merely because the short period between the violation and the filing of the complaint did not create the risk of inadequate evidence through fading memories or loss of witnesses. This prejudice to defendant, or lack of it, is simply irrelevant when Congress has drawn a line at the point where it believed claims should be barred. As the Court said in *Mohasco*, "[e]ven if the interest of justice might be served in this particular case by [permitting this claim to be heard], in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." 447 U.S. at 826. *See also Zambuto v. American Telephone and Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977).

As we noted in *Bonham*, conduct of the defendant that misleads the claimant or gives rise to an estoppel may warrant equitable tolling. In *Burnett v. New York Central Railroad*, for example, the Court permitted tolling in a federal employers' liability case that had been timely filed in state court, but venue was improper under state law. There, however, the defendant had been placed on notice within the appropriate limitations period and, in other cases, had generally waived state venue requirements. Those circumstances are not present here. The School District was in no

way responsible for Hanna's failure to file a complaint within the statutory period. Moreover, later Supreme Court cases imply that *Burnett* should be narrowly read. *See* B. Schlei & P. Grossman, Employment Discrimination Law 910–12 (1976) and *id.* at 235–36 (1979 Supp.).

The alleged confusion at the EPA is also irrelevant. It is not the agency to whom a complaint is to be addressed, and in any event, when Hanna first contacted it in April, the thirty-day period with respect to all but the ban on access claim had already elapsed. The tolling argument based upon the agency's actions is therefore limited to this one claim. In our view, that argument must be that the limitation period should be tolled because the EPA did not reply to Hanna's inquiries more promptly and more accurately. We disagree. When all the chaff is stripped away, the naked reason for the delay was Hanna's lack of knowledge about the remedy. The statutory language is plain and direct and leaves no basis for reliance upon the EPA in any respect. *Cf. Chappell v. Emco Machine Works Co.*, 601 F.2d 1295, 1304–06 (5th Cir. 1979) (Wisdom, J., dissenting) (agency prevented Title VII claimant from filing in timely fashion). Hanna's ignorance of the law is not enough to invoke equitable tolling. *Quina v. Owens-Corning Fiberglas Corp.*, 575 F.2d 1115, 1118 (5th Cir. 1978).

Congress granted a right of action to victims of reprisals for invoking the provisions of this Act. The benefits to the claimant, however, were balanced by the limited time within which the defendant would be exposed to liability. It is not unfair to recognize both benefit and detriment to guarantee "evenhanded administration of the law."

We reject the School District's contention that the thirty-day limitations period is jurisdictional. However, because we conclude that there was no adequate basis for disregarding the time limit set out in the statute's clear language, the Secretary acted in excess of statutory limitations. 5 U.S.C. § 706(2)(C) (1976). Consequently, the petition for review will be granted, and the order of the Secretary will be set aside.